**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| CHRISTINA BOTELLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. C-06-477 |
| | § | |
| CORPUS CHRISTI HOUSING | § | |
| AUTHORITY, | § | |
| | § | |
| Defendant. | § | |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On this day came on to be considered the motion of the Defendant Housing Authority of the City of Corpus Christi ("Housing Authority")[1] for summary judgment in the above-styled action (D.E. 19).  Defendant seeks summary judgment on Plaintiff Christina Botello's claims for gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").  For the reasons set forth below, Defendant's motion for summary judgment is hereby DENIED.

## I.  Jurisdiction

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

---

[1]Defendant was initially incorrectly named as the Corpus Christi Housing Authority.  Defendant has since indicated that its proper name is the "Housing Authority of the City of Corpus Christi."  (D.E. 19, p. 1).

II.  **Factual Background**

A.   **Plaintiff's Employment History at the Housing Authority**

The following facts are not in dispute:  Plaintiff Christina Botello was employed by the Defendant Housing Authority from December, 1987 through February, 1998, and again from July, 2000 through her termination on October 27, 2005.  (PX-8, Botello Decl., ¶ 2).[2]  In July, 2000, Plaintiff was employed at the Housing Authority as a "Property Manager I."  (DX-1-1, July 5, 2000 Personnel Action Form).  In November, 2000, Plaintiff assumed the position of "Assistant Director of Housing Programs," and Plaintiff received a pay raise in accordance with her new position.  (DX-1-5, November 6, 2000 Personnel Action Form).  In September, 2001, Plaintiff assumed the position of "Director of Housing Programs," and Plaintiff again received a pay raise in accordance with her new position.  (DX-1-7, September 1, 2001 Personnel Action Form; DX-1-8, September 3, 2001 Personnel Action Form).  Plaintiff's position as Director of Housing Programs was a management position at the Housing Authority.  (Botello Decl., ¶ 3).

On December 17, 2001, while Plaintiff was serving in the position of Director of Housing Programs, Richard Franco was hired as the Executive Director of the Housing Authority.  (DX-1, PX-7,

_____

[2]Plaintiff left her initial employment at the Housing Authority in February, 1998 to pursue her formal education on a full-time basis.  (DX-1-10, February, 1998 Employee Resignation Statement).

Franco Decl., p. 1).  In January, 2002, the title of Ms. Botello's position was changed to "Director of Housing Management."  (DX-1-19, January 18, 2002 Personnel Action Form).  Ms. Botello's salary did not change in accordance with her new title.  (Id.).  Ms. Botello's position of Director of Housing Management was also a management position within the Housing Authority.  (Botello Decl., ¶ 3).

While she was serving as Director of Housing Management, in October, 2003, Ms. Botello received a 10.3% increase in salary, approved by Mr. Franco.  (DX-1-13, October 1, 2003 Personnel Action Form).  However, in October, 2004, although Mr. Franco approved salary increases for certain other Housing Authority employees, Ms. Botello did not receive an increase in salary.  (Franco Decl., p. 8).  Mr. Franco claims that the reason Ms. Botello did not receive a salary increase in October, 2004 is because Mr. Franco "did not believe she merited it."  (Id.).

**B.    Joe Garcia and Rachel Benavides Complaint**

In April, 2004, while Ms. Botello was serving as Director of Housing Management, Ms. Botello's subordinate Rachel Benavides informed Ms. Botello of a situation regarding Joe Garcia.  (PX-5, Botello Dep., 79:18-80:7).

Joe Garcia was initially employed at the Housing Authority as an "Employee Resource Specialist," earning a bi-weekly salary of $922.40.  (Franco Decl., p. 4).  In August, 2002, Mr. Franco

promoted Mr. Garcia to "Director of Personnel & Administrative Services," with an increase in bi-weekly salary to $2,114.40. (Id.; DX-1-23, August 12, 2002 Memorandum).   In September, 2003, Mr. Franco again promoted Joe Garcia to the newly-created position of "Operations Officer." (Franco Decl., p. 5).   In this capacity, Mr. Garcia served as Mr. Franco's "second in command" at the Housing Authority.[3]   (Id.).

In April, 2004, Ms. Benavides informed Ms. Botello that she thought that Mr. Garcia bumped into her on purpose to get close to her, and that Mr. Garcia initiated a conversation about how long it had been since he had sexual relations with his wife.   (Botello Dep., 80:11-81:1).   Ms. Benavides told Ms. Botello that she took Mr. Garcia's comments to mean that Mr. Garcia was interested in having sexual relations with Ms. Benavides.   (Id., 81:10-13).   Ms. Botello informed Mr. Franco of these alleged comments and actions by Mr. Garcia.   (Id., 93:16-94:12).   Mr. Franco instructed Ms. Botello not to write up anything formal regarding Ms. Benavides' statements, and indicated that he would handle the situation. (Id., 95:4-13).   Mr. Franco indicates that he met with Mr. Garcia, and that Mr. Garcia told Mr. Franco that Mr. Garcia had not acted

---

[3]In addition to serving as Operations Officer, Mr. Garcia also continued to serve as Director of Personnel and Administrative Services.   (Id.).   Of note, Ms. Botello indicated that she would have liked to apply for the position of Operations Officer, and that Mr. Franco was aware of her interest in the position.   (PX-5, Botello Dep., 61:25-62:24).

"untoward" to Ms. Benavides.   (PX-1, Franco Dep., 40:6-24).   Mr.
Franco did not speak to Ms. Benavides or conduct any further
investigation into the issue.   (Franco Dep., 41:3-16).   Mr. Franco
indicates that he considered the complaint to be without merit.
(Id.).

C.    **Re-Assignment to Senior Vice President of Asset**
      **Management - Division I**

From May, 2003 until June, 2005, while Ms. Botello served as
Director of Housing Management, Dan Jaramillo reported to and was
directly supervised by Ms. Botello.   (DX-1-27, May 5, 2003
Personnel Action Form).   During this time period, Mr. Jaramillo
served as "Deputy Director of Housing Management."   (Id.).

In 2004 and 2005, Executive Director Franco led a
reorganization of the Housing Authority to a system of "asset based
management."   As a part of this reorganization, Mr. Franco elected
to divide the Housing Management Department[4] into two similarly
sized districts, classified as districts I and II.   (Franco Decl.,
pp. 8-9).   Mr. Franco decided to have district I led by Ms.
Botello, and district II led by Ms. Botello's former subordinate,
Dan Jaramillo.   (Id.).   In accordance with this plan, on June 25,
2005, Ms. Botello was assigned by Mr. Franco to the position of
"Senior Vice President of Asset Management - District 1," and Mr.

---

[4]The Housing Management Department was led by Ms. Botello as
Director of Housing Management.

Jaramillo was assigned to the position of "Senior Vice President of Asset Management - District II."   (DX-1-16, DX-1-41 and DX-1-42, June 25, 2005 Personnel Action Forms).   Ms. Botello did not experience a change in salary in connection with her transition from Director of Housing Management to Senior Vice President of Asset Management - District I.   (Id.).   However, Ms. Botello's responsibilities were reduced, and Ms. Botello's former subordinate Dan Jaramillo was elevated to an equal position to Ms. Botello. (Id.; Franco Decl., pp. 8-9)   Mr. Jaramillo considered his move from Deputy Director of Housing Management (under Ms. Botello) to Senior Vice President of Asset Management - District II to be a "promotion", and Mr. Jaramillo received an increase in pay in accordance with his new position.   (DX-1-42, June 25, 2005 Personnel Action Form; PX-3, Jaramillo Dep., p. 71).

In their new positions, Ms. Botello and Mr. Jaramillo now reported to Joe Garcia.   In June, 2005, Mr. Franco changed Mr. Garcia's title from "Operations Officer/Director of Personnel & Administrative Services" to "Chief Operations Officer."   (Franco Decl., p. 9).   In this capacity, Mr. Garcia continued to serve as Mr. Franco's "second in command," and Mr. Garcia's responsibilities included "supervision of asset base (sic) management - districts I and II".   (Id.).   As noted above, Mr. Garcia was the subject of the alleged harassment claim that Ms. Botello reported to Mr. Franco in April, 2004.   (Botello Dep., 80:11-81:13, 93:16-94:12).

### D.   __Plaintiff's Termination__

Executive Director Franco claims that around February, 2005, he received reports from Joe Garcia and/or Mike Linnane (another Housing Authority employee) that Ms. Botello was not being cooperative with respect to the asset based management reorganization.[5]  (Franco Decl., p. 10).  Mr. Franco claims that Mr. Linnane and Mr. Garcia recommended that Mr. Franco terminate Plaintiff "due to her unwillingness to cooperate with the leadership team in implementing asset base (sic) management." (__Id.__).   Mr. Franco claims that he did not act on their recommendation at the time, but rather decided to wait in hopes that "Ms. Botello's conduct would improve."  (__Id.__).   Mr. Franco claims that Ms. Botello's conduct did not improve, and therefore, on October 27, 2005, at Mr. Franco's direction, Ms. Botello was terminated from her employment with the Housing Authority.  (Franco Decl., p. 11; DX-1-17, Termination Letter; DX-1-18, October 27, 2005 Personnel Action Form).

## II.  __Procedural Background__

Plaintiff filed her Original Complaint against the Housing Authority on October 27, 2006 (D.E. 1).   In her Complaint,

---

[5]Of note, from 2002 through her termination in 2005, Ms. Botello consistently received "above standards" ratings on her annual performance evaluations.  (DX-1-12, DX-1-14, DX-1-15, Annual Performance Evaluations).  Ms. Botello's annual performance evaluations did not contain written documentation regarding alleged non-cooperation on the transition to asset based management.  (__Id.__).

Plaintiff brings claims against Defendant for gender discrimination and retaliation in violation of Title VII.  (Id., ¶¶ 25-31).

Defendant filed its motion for summary judgment on July 20, 2007 (D.E. 19).[6]  Defendant argues that Plaintiff did not exhaust her administrative remedies, and that Defendant is entitled to summary judgment on Plaintiff's claims for gender discrimination and retaliation.  (Motion, pp. 15-22).  Defendant has submitted evidence in support of its motion for summary judgment, including a declaration of Richard Franco, various Housing Authority personnel action forms, and annual performance evaluations of Plaintiff.  (See D.E. 19, attachments (DX-1 through DX-3)).

Plaintiff filed her response to Defendant's motion for summary judgment on August 9, 2007 (D.E. 22).  Plaintiff argues that she did exhaust her administrative remedies by filing a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and that factual disputes preclude summary judgment on Plaintiff's claims for Title VII gender discrimination and retaliation.  (Response, pp. 11-18).  Plaintiff has submitted evidence in support of her response, including excerpts of the

_____

[6]Defendant originally filed its motion for summary judgment on July 16, 2007 (D.E. 17), in accordance with the Court's scheduling order in the case (D.E 13).  However, the Court struck Defendant's motion on July 19, 2007, because of a problem with the signature block (D.E. 18).  Defendant re-filed its motion for summary judgment on July 20, 2007, correcting the problem regarding the signature (D.E. 19).  The Court granted Defendant permission to re-file its motion for summary judgment and deemed the motion filed as of July 20, 2007 (D.E. 21).

depositions of Richard Franco, Joe Garcia, Dan Jaramillo, Michael Linnane and Christina Botello, and certain Housing Authority memoranda regarding the hiring of a new property manager.   (See D.E. 22, attachments (PX-1 through PX-11)).

**III.  Discussion**

   **A.   Summary Judgment Standard**

   Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."   Fed. R. Civ. P. 56(c).   The substantive law identifies which facts are material.   See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).   A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

   The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-1047 (5th Cir. 1996).   If

the nonmovant bears the burden of proof on a claim, the moving party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.  See Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."  First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue).

When the parties have submitted evidence of conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Willis, 61 F.3d at 315.  Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party.  See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

**B.** **Defendant is Not Entitled to Summary Judgment on Plaintiff's Claim for Title VII Gender Discrimination**

**1.** **Title VII Discrimination**

Title VII makes it an "unlawful employment practice for an employer to ... discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e2(a)(1).[7]

_____

[7]The Court notes Defendant's unpersuasive argument that Plaintiff did not successfully exhaust her administrative remedies in this case, because Plaintiff did not file a timely charge of discrimination with the EEOC. (Motion, pp. 15-16). "Title VII requires that parties exhaust administrative remedies before instituting suit in federal court." Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, 40 F.3d 698, 711 (5th Cir. 1994). "[B]efore a plaintiff can commence a civil action under Title VII in federal court, she must file a timely charge with the EEOC, or with a[n] [appropriate] state or local agency". Dao v. Auchan Hypermarket, 96 F.3d 787, 789 (5th Cir. 1996). In Texas, for a charge to be timely, "[a] Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days of learning of the alleged unlawful employment action." Grice v. FMC Technologies Inc., 216 Fed.Appx. 401, 405 (5th Cir. 2007). In this case, Plaintiff filed her EEOC charge of discrimination on February 9, 2006. (DX-2, Charge of Discrimination). Plaintiff was terminated on October 27, 2005, which is well within the 300 days prior to February 9, 2006. In her charge of discrimination and in her Complaint, Plaintiff complains of her termination. Specifically, in her charge of discrimination, Plaintiff complains that she "was **terminated** from her position because of [her] opposition to and resistance against gender discrimination at the Housing Authority." (Id.) (emphasis added). In her Original Complaint, Plaintiff does describe various problems at the Housing Authority beginning in 2003, but these events describe the background and circumstances leading up to Plaintiff's termination. (D.E. 1). Plaintiff may describe these "prior acts as background evidence in support of a

A plaintiff can prove her allegations with either direct or indirect evidence. Absent direct evidence of discrimination, courts use the McDonnell Douglas three-part burden shifting framework to analyze a Title VII claim.[8] See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); Frank v. Xerox Corp., 347 F.3d 130, 137 (5th Cir. 2003).

### a. Prima Facie Case: (Discrimination)

Under this framework, the plaintiff must initially establish a prima facie case of discrimination. See McDonnell Douglas Corp., 411 U.S. at 802; Johnson v. Louisiana, 351 F.3d 616, 621 (5th Cir. 2003) (citing Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 680 (5th Cir. 2001)) (the burden lies initially with the plaintiff "to raise a genuine issue of material fact on each element of his prima facie case"). In order to establish a prima facie case of

---

timely claim." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). However, in this case, the ultimate employment decision on which Plaintiff bases her charge of discrimination and her Complaint is her October, 2005 termination, and this Court treats Plaintiff's Title VII claims as based on that termination. Since Plaintiff filed a timely charge of discrimination within 300 days of her termination, Defendant is not entitled to summary judgment on the grounds that Plaintiff failed to exhaust her administrative remedies.

[8]The Court notes Plaintiff's argument that she has submitted direct evidence of discrimination, and that the McDonnell Douglas burden shifting analysis is therefore not applicable in this case. (Response, p. 12). The Court does not accept this argument, since Plaintiff has not presented direct evidence that she was terminated on the basis of her gender. Rather, as set forth below, Plaintiff has presented indirect evidence of discrimination that triggers use of the McDonnell Douglas burden shifting framework. See, e.g., Frank, 347 F.3d at 137.

discrimination under Title VII, a plaintiff must prove that (1) she is a member of a protected class; (2) she was qualified for the position held; (3) she was subject to an adverse employment action; and (4) the person selected to replace the plaintiff was not within the same protected class. See Frank, 347 F.3d at 137.

### b.  **Burden Shifting**

Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its decision to take an adverse employment action against the plaintiff. See Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 404 (5th Cir. 1999). If the employer meets this burden of production, the prima facie case dissolves, and the burden shifts back to the plaintiff to establish that the employer's explanation is merely pre-textual. See id.; McDonnell Douglas, 411 U.S. at 805 (stating that the burden shifts back to plaintiff to show that the defendant's justification is "in fact a coverup for a ... discriminatory decision").

### 3.  **Factual Dispute Precludes Summary Judgment for Defendant on Plaintiff's Claim for Gender Discrimination**

#### a.  **Prima Facie Case**

In this case, Plaintiff has submitted evidence to support a prima facie case of discrimination. First, it is undisputed that Plaintiff, as a female, is a member of a protected class. Second,

it is not disputed that Plaintiff was qualified for the position she held at her termination, Senior Vice President of Asset Management - District I.[9]   Third, it is not disputed that Plaintiff suffered an adverse employment action, in that Plaintiff was terminated from her employment with the Housing Authority on October 27, 2005.  (Franco Decl., p. 11; Termination Letter, October 27, 2005 Personnel Action Form).   Finally, it is also undisputed that after Plaintiff was terminated, her position was taken over by a male, Joe Garcia.[10]  (Franco Dep., 64:18-20; PX-2, Garcia Dep., 44:14-20).   Mr. Garcia has held that position on an "interim" basis since Ms. Botello's termination.  (Franco Dep.,

---

[9]The parties have submitted evidence showing that Plaintiff was qualified for the position she held at the time of her termination.  Plaintiff held various management positions at the Housing Authority since 2001.  (Botello Decl., ¶ 3).  Executive Director Franco classified Plaintiff as a "senior executive" at the Housing Authority.  (Franco Dep., 82:22-23).  Further, prior to assuming the asset management position Plaintiff held at the time of her termination, Plaintiff had served as Director of Housing Management for several years.  (Botello Decl., ¶ 3; June 25, 2005 Personnel Action Forms).  Her position as Director of Housing Management encompassed more responsibility than the asset management position she held at the time of her termination. (Franco Decl., pp. 8-9).  Further, in her position as Director of Housing Management, Plaintiff consistently received "above standards" annual performance evaluations.  Based on the above, Plaintiff has submitted sufficient evidence to show that she was qualified for the asset management position she held at the time of her October, 2005 termination.

[10]Mr. Garcia assumed Ms. Botello's position in addition to his role as Chief Operating Officer.  (Franco Dep., 64:18-22).

64:22-65:2).[11]   Based on the above, Plaintiff has established a
prima facie case of discrimination, and the burden shifts to the
Housing Authority to produce a legitimate, nondiscriminatory reason
for terminating Plaintiff's employment.  See Shackelford, 190 F.3d
at 404.

### b.   **Burden Shifting to Defendant**

In this case, Defendant claims that it had a legitimate,
nondiscriminatory reason for terminating Plaintiff from her
position with the Housing Authority.   Specifically, Executive
Director Richard Franco claims that in February, 2005, he received
reports from Joe Garcia and/or Mike Linnane that Plaintiff was not
cooperating with regard to the Housing Authority's transition to an
asset based management system.  (Franco Decl., p. 10).[12]  Mr. Franco
indicates that Mr. Garcia and Mr. Linnane recommended that Mr.
Franco terminate Plaintiff "due to her unwillingness to cooperate
with the leadership team in implementing asset base (sic)
management."  (Id.).  Mr. Franco claims that he waited six months
before taking any action, hoping that Plaintiff's "conduct would
improve."  (Id.).  Mr. Franco contends that Plaintiff's conduct did

---

[11]Dan Jaramillo, another male, assists with overseeing Ms.
Botello's former area of responsibility (district I) when Mr.
Garcia is "gone on a business trip or vacation." (Jaramillo
Dep., p. 18).

[12]Of note, Mr. Garcia was the subject of the alleged
harassment claim Plaintiff brought to Mr. Franco's attention in
April, 2004. (Botello Dep., 80:11-81:13, 93:16-94:12).

not improve, and therefore, he directed that Plaintiff be terminated from her employment because of her "refusal, lack of cooperation, recalcitrance, and stonewalling toward the implementation of asset base (sic) management" at the Housing Authority. (Id.).

### c.   **Factual Dispute Regarding Pretext**

Accordingly, Defendant has proffered a non-discriminatory reason for Plaintiff's October, 2005 termination.  However, in this case, as set forth below, there is a factual dispute as to whether Defendant's explanation is merely pretext for unlawful discrimination, and whether discrimination was the real reason for Plaintiff's termination.  This factual dispute precludes summary judgment for Defendant on Plaintiff's claim for gender discrimination.

Although Defendant claims that it terminated Plaintiff's employment because of her failure to cooperate with the implementation of asset based management, Defendant has not submitted specific evidence in support of this claim, and the parties have submitted evidence indicating that Plaintiff was not suffering performance problems prior to her 2005 termination. First, Executive Director Franco could not recall any specific instances of Plaintiff's "refusal to follow directives" with regard to the implementation of asset based management, even though he based Plaintiff's termination in part on such a refusal.  (Franco

Dep., 47:2-48:8, stating that Mr. Franco could not recall "any one specific directive that [he] relied on in deciding to terminate Chris Botello's employment").  Further, although Defendant claims that there was a six month period during which Mr. Franco hoped that Plaintiff's conduct would "improve," during this six month period Mr. Franco did not provide Plaintiff with any written or verbal counseling regarding her allegedly serious performance problems.  (Franco Dep., 83:16-25, stating that Mr. Franco did not communicate in writing to Ms. Botello that her performance was "deficient, insufficient, insubordinate, [and/or] non compliant"; Franco Dep. 84:7-9, stating that Mr. Franco did not give Ms. Botello "any verbal counseling" about insufficiencies in her performance).  Moreover, in June, 2005, a few months before her termination and during the period when her conduct was allegedly not "improv[ing]," Plaintiff received an annual performance evaluation indicating that her performance was "above standards." (DX-1-16, Annual Performance Evaluation).  There is no indication in the review that Plaintiff was suffering any difficulty in performance, let alone that Plaintiff's alleged recalcitrance, lack of cooperation and refusal to follow directives was so serious that Plaintiff was in danger of being terminated in the near future. (Id.).  To the contrary, in the comments section of the review, Mr. Franco wrote as follows:  "I look forward to implementing asset based management and how you [Plaintiff] will utilize your

leadership skills to bring it to fruition." (Id.).  Finally, the parties have submitted evidence that Plaintiff was actually involved in the transition to asset based management, in the form of participation on a leadership committee that worked on the reorganization.  (DX-1-36, October 7, 2004 Memorandum; DX-1-37, October 21, 2004 Memorandum).  Mr. Franco wrote in a memorandum to the leadership team that the team was "to be commended for [its members'] creativeness, and innovative ideas." (Id.).  This evidence contradicts Defendant's claims regarding Plaintiff's performance issues regarding the asset based management reorganization.

In addition to the factual issues regarding Defendant's proffered reason for Plaintiff's termination, Plaintiff has submitted evidence regarding gender based discrimination at the Housing Authority, specifically with respect to Mr. Franco.  This evidence relates to the hiring of a new Housing Authority property manager in September, 2002.  Plaintiff and Elda Sanchez, then-Housing Management Supervisor, interviewed and scored various candidates for the property manager position.  (PX-10, September 26, 2002 Memorandum).  James Cavazos, a male, had the lowest interview score out of the five candidates.  (Id.).  Ms. Botello and Ms. Sanchez initially selected a female candidate to hire for the position, based on her interview score and experience.  (Id.).  Ms. Botello and Ms. Sanchez submitted their written recommendation

to Mr. Franco.  (<u>Id.</u>).  Mr. Franco did not approve of Ms. Botello and Ms. Sanchez' recommendation, writing on their memorandum: "unacceptable selection - Try again! Diversity will help!" (<u>Id.</u>). Mr. Franco indicates that "[he] was looking for some male employees in the management side of the house. ... that was my intent to diversify the makeup of the housing authority." (Franco Dep., 85:5-86:10).  Mr. Franco testified that he thought Ms. Botello and Ms. Sanchez "should dig a little deeper, do something to give other people an opportunity." (Franco Dep., 87:8-10).  Mr. Franco also testified that he recommended that Ms. Botello and Ms. Sanchez ***hire the best qualified male to create some diversity***." (Franco Dep., 88:14-15) (emphasis added).  In accordance with Mr. Franco's input, Ms. Botello and Ms. Sanchez changed their recommendation, submitting a memorandum recommending that James Cavazos be hired for the position despite his low score in the interview process. (PX-11, September 27, 2002 Memorandum).

Based on the above, there is a factual dispute as to whether Defendant's explanation for Plaintiff's termination is merely pretextual, and whether discrimination at the Housing Authority, specifically with respect to Mr. Franco, was the real reason for Plaintiff's termination.  This factual dispute precludes summary judgment for Defendant on Plaintiff's claim for Title VII gender discrimination.

C.  **Defendant is Not Entitled to Summary Judgment on Plaintiff's Claim for Title VII Retaliation**

1.  **Title VII Retaliation**

Title VII prohibits employers from retaliating against an employee who opposes what the employee believes to be an unlawful employment practice.  See 42 U.S.C. § 2000e-3(a).  Title VII retaliation claims are analyzed under the McDonnell Douglas burden shifting framework.  See Hockman v. Westward Communications, LLC, 407 F.3d 317, 330 (5th Cir. 2004) ("We analyze [Title VII] retaliation claims under the McDonnell Douglas burden-shifting framework.").

a.  **Prima Facie Case: (Retaliation)**

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of retaliation.  See Allen v. Texas Dept. of Transp., 186 Fed.Appx. 501, 502 (5th Cir. 2006).  To establish a prima facie case of Title VII retaliation, the plaintiff must show: (1) that the employee participated in an activity protected under Title VII; (2) that the employee suffered an adverse employment decision; and (3) that a causal connection exists between the protected activity and the adverse employment action.  See id.; Brazoria County, Texas v. Equal Employment Opportunity Commission, 391 F.3d 685, 692 (5th Cir. 2004).

For the first element of the test, a plaintiff engages in activity protected under Title VII when he or she "oppose[s] any

practice made an unlawful employment practice by Title VII", or makes a charge, assists, or participates in any manner in an investigation, proceeding or hearing under Title VII.  42 U.S.C. § 2000e-3(a); see also Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996).  The employee must demonstrate that he or she had a "reasonable belief" that the opposed practices were unlawful.  See Long, 88 F.3d at 304; Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1140 (5th Cir. 1981).

The causal connection required in the third element of the prima facie case has a lower threshold than the "but for" causation required to ultimately prove retaliation.  Sherrod v. Am. Airlines, Inc., 132 F.3d 1112, 1122 n. 8 (5th Cir. 1998).  For the prima facie case, the plaintiff need not prove that retaliation was the sole factor in the defendant's decision to take adverse action against the employee.  See Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002).

### b.  Burden Shifting

Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its employment decision.  See Strong v. Univ. HealthCare Sys., L.L.C., 482 F.3d 802, 805 (5th Cir. 2007).  If the employer meets this burden of production, the plaintiff's prima facie case dissolves, and the burden shifts back to the plaintiff to establish that the employer's explanation is

merely a pretext for retaliation.  See id.; Baker v. Am. Airlines, Inc., 430 F.3d 750, 754-55 (5th Cir. 2005).  Ultimately, the plaintiff must show that the employer's proffered reason is false, and that "but for" the protected activity, the adverse employment action would not have taken place.  Mayberry v. Mundy Contract Maint. Inc., 197 Fed.Appx. 314, 317 (5th Cir. 2006).

> **2.  Factual Dispute re: Prima Facie Case Precludes Summary Judgment for Defendant**

In this case, there is a factual dispute as to whether Plaintiff has established a prima facie case of retaliation.  That factual dispute precludes summary judgment for Defendant on Plaintiff's retaliation cause of action.

> **a.  Protected Activity Under Title VII**

With regard to the first prong of her prima facie case, Plaintiff submitted evidence demonstrating that she participated in an activity protected under Title VII.  This activity consisted of Plaintiff's report of Rachel Benavides' claims regarding Joe Garcia.  As referenced above, in April, 2004, Plaintiff's subordinate Rachel Benavides informed Plaintiff that she thought Mr. Garcia bumped into her on purpose to get close to her, and that Mr. Garcia initiated a conversation with Ms. Benavides regarding how long it had been since he had sexual relations with his wife. (Botello Dep., 80:11-81:1).  Plaintiff claims that Ms. Benavides took these comments to mean that Mr. Garcia was interested in

having sexual relations with Ms. Benavides.  (Id., 81:10-13).  At
the time of these alleged events, Mr. Garcia was serving as
Operations Officer at the Housing Authority, as Executive Director
Franco's "second in command."  (Franco Decl., p. 5).  Plaintiff
informed Mr. Franco of Ms. Benavides' comments, and Mr. Franco
indicated that he would handle the situation.  (Botello Dep.,
93:16-94:12, 95:4-13).  The only action taken by Mr. Franco was to
speak with Mr. Garcia on the issue, and Mr. Franco thereafter
determined that the complaint had no merit.  (Franco Dep., 40:6-
41:16).  At the time of the events in question, Plaintiff was
authorized to receive a formal complaint of discrimination at the
Housing Authority.  (PX-6, Second Franco Dep., 51:9-20).

Accordingly, Plaintiff has submitted evidence establishing the
first prong of her prima facie case for retaliation.  This is
because Plaintiff's report of Ms. Benavides' comments to Mr. Franco
consisted of a protected activity under Title VII.  See, e.g.,
Beaumont v. Texas Dept. of Criminal Justice, 468 F.Supp.2d 907, 923
(E.D. Tex. 2006) (finding that the plaintiffs engaged in a
protected activity where they "reported ... alleged harassment" to
a supervisor); Gaspard v. J & H Marsh & McLennan of Louisiana,
Inc., 105 F.Supp.2d 537, 544 (E.D. La. 2000) ("Clearly, reporting
sexual harassment is a protected activity found under Title VII.");
Gogreve v. Downtown Dev. Dist., 426 F.Supp.2d 383, 391 (E.D. La.
2006) (finding that plaintiff made out a prima facie case of

retaliation, where plaintiff reported the "discriminatory comments and actions" of her employer's executive director).

### b.   **Adverse Employment Action**

With regard to the second prong of Plaintiff's prima facie case, it is undisputed that Plaintiff was terminated from her employment. (Franco Decl., p. 11; Termination Letter; October 27, 2005 Personnel Action Form).   "[T]ermination qualifies as an adverse employment action, thus satisfying the second prong of [Plaintiff's] prima facie retaliation case." Richard v. Cingular Wireless LLC, 2007 WL 1121720, *4 (5th Cir. 2007).

### c.   **Causal Connection**

With regard to the third prong of Plaintiff's prima facie case, there is a factual dispute as to whether a causal connection exists between Plaintiff's report regarding Ms. Benavides/Mr. Garcia and Plaintiff's termination.   To establish her prima facie case, all Plaintiff must do is "produce *some* evidence of a causal link between the protected activity and the adverse employment action." Tucker v. SAS Inst., Inc., 462 F.Supp.2d 715, 730-31 (N.D. Tex. 2006) (emphasis in original) (internal quotations omitted).

In this case, the parties have submitted evidence that Plaintiff reported a complaint regarding Mr. Garcia to Mr. Garcia's supervisor, and less than a year later, Mr. Garcia informed Mr. Franco of Plaintiff's allegedly deficient job performance and recommended Plaintiff's termination.   Specifically, the parties

produced evidence that it was <u>Mr. Garcia</u> who brought Plaintiff's alleged performance problems to Mr. Franco's attention.  (Franco Decl., p. 10).  Mr. Garcia supposedly brought this information to Mr. Franco around February, 2005, when Mr. Franco was still Plaintiff's supervisor.  (<u>Id.</u>, pp. 9-11).  Further, Mr. Franco indicated that around February, 2005, it was <u>Mr. Garcia</u> who recommended that Plaintiff be terminated because of her alleged myriad of performance problems.  (<u>Id.</u>, p. 10).  However, Defendant did not submit any independent evidence of Plaintiff's alleged performance concerns, other than what Mr. Garcia and Mr. Linnane supposedly told Mr. Franco.  (<u>Id.</u>).  To the contrary, Mr. Franco did not recall specifics regarding Plaintiff's allegedly unsatisfactory performance.  (Franco Dep., 47:2-48:22).  Further, Plaintiff's annual evaluation issued in June, 2005, shortly before her termination, rated Plaintiff as "above standards" and did not reference any problems with cooperation, refusal to follow directives, or any other insufficiencies in work performance. (June, 2005 Annual Performance Evaluation).

Given all of these circumstances, Plaintiff has submitted evidence to create a fact issue as to the third element of her prima facie case.  This fact issue precludes summary judgment for Defendant on Plaintiff's claim for Title VII retaliation.

## V.   <u>Conclusion</u>

For the reasons set forth above, Defendant's motion for summary judgment is hereby DENIED.  Plaintiff's claims for gender discrimination and retaliation in violation of Title VII remain pending in this case.[13]

SIGNED and ENTERED this 22nd day of August, 2007.

_____
Janis Graham Jack
United States District Judge

---

[13]The Court notes Plaintiff's request for the attorney's fees incurred in preparing Plaintiff's response to Defendant's motion for summary judgment.  The Court DENIES Plaintiff's request for such attorney's fees, without prejudice.  Plaintiff may reassert her request for attorney's fees in the event that Plaintiff is the prevailing party in this action.